**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

     Of Attorneys for the plaintiff

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **LINDA ESTES,** | Case No. 3:21-cv-0726 |
| Plaintiff, | **COMPLAINT** |
| | UNLAWFUL EMPLOYMENT ACTION |
| v. | Americans with Disabilities Act |
| | Discrimination, Retaliation; FMLA; and |
| **RICOH USA, INC.,** | supplemental state law claims |
| Defendant. | **JURY TRIAL DEMANDED** |

## I.    <u>PRELIMINARY STATEMENT</u>

1.    This is an action for damages and equitable relief, including compensatory

damages, back pay, front pay, and attorneys' fees and costs, to redress violation of Title I of the

Americans with Disabilities Act, the Family Medical Leave Act (FMLA), and Oregon state laws

regarding Unlawful Employment Practices.

## II.    <u>JURISDICTION</u>

2.    Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, federal question

PAGE 1 – COMPLAINT AND DEMAND
FOR JURY TRIAL

jurisdiction, and 28 U.S.C. §1343, civil rights jurisdiction.

3.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.      All preconditions to jurisdiction pursuant to 42 U.S.C. §2000e-5 have been satisfied.

        a.      On or about March 12, 2020, a perfected administrative complaint was filed with the Oregon Bureau of Labor and Industries (BOLI). BOLI filed administrative changes under case number DPEMDP200312-10718, for violation of Oregon Unlawful Employment Practices.

        b.      On or about, July 15, 2020,  BOLI co-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission EEOC, Charge No. 38D-2020-00632C for violation of The Americans with Disabilities Act (ADA).

        c.      On February 10, 2021, BOLI issued Plaintiff a letter notifying Plaintiff of the right to file a civil suit.

        d.      On May 6, 2021, the EEOC issued a Notice of Suit Rights to Plaintiff.

        e.      This lawsuit was filed within 90 days of the February 10, 2021, notice of suit rights.

5.      Plaintiff's claims under Oregon law are timely filed. On February 25, 2021, Governor Kate Brown issued Executive Order No. 21-04, an extension of March 8, 2020, Executive Order No. 20-03 on the COVID-19 State of Emergency.

6.      On June 30, 2020, a comprehensive measure relates to COVID-19, House Bill

PAGE 2 – COMPLAINT AND DEMAND
FOR JURY TRIAL

4212 was signed into law on June 30, 2020, and became effective immediately on passing. The bill tolls the commencement of civil actions and ratified the Governor's executive order. Said bill provides "If the expiration of the time to commence an action or give notice of a claim falls within the time in which any declaration of a state of emergency issued by the governor related to COVID-19, and any extension if the declaration, is in effect, or within 90 days after the declaration and any extension is no longer in effect, the expiration of the time to commence the action or give notice of the claim is extended to a date 90 days after the declaration and any extension is no longer in effect."

7.      Venue is in the District of Oregon pursuant to 28 U.S.C. §1391(b) because the claim arose in this Judicial District.

### III.    PARTIES

8.      Plaintiff Linda Estes is a citizen of the United States. At all times material, Plaintiff worked for Defendant Ricoh USA, Inc. in Multnomah County. At all times material, Plaintiff had one or more disabilities or was regarded by Defendant as having disabilities. At all times material, Plaintiff had taken protected medical leave or had sought to take protected medical leave.

9.      Defendant Ricoh USA, Inc. (hereafter "Defendant" or "Ricoh") is a Pennsylvania corporation, qualified to do business in Oregon. Said Defendant does regular and sustained business in Multnomah County, Oregon where Plaintiff was employed.

10.     At all times relevant, Defendant's employees and supervisors, as their conduct is alleged herein, were acting within the course and scope of their employment with Defendant.

/////

/////

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

## GENERAL FACTUAL ALLEGATIONS

11.     Plaintiff has multiple disabilities. Plaintiff has one or more physical or mental conditions that substantially limit or impair one or more major life activities.

12.     Plaintiff was discriminated against and retaliated against by Defendant on the basis of her disability. She has also been subjected to medical leave interference.

13.     On August 20, 2018, Defendant hired Plaintiff to work onsite at its client, Standard Insurance, in Portland, Oregon. Defendant hired Plaintiff as a Forms Management Specialist.

14.     Before Defendant hired Plaintiff, she sat for a job interview at the Standard Insurance Center building in downtown Portland. During the interview, Plaintiff told the interviewers, Lisa Busenbark, Site Supervisor II (Forms Production Manager), and Jonathan Andres, Senior National Operations Manager, that she had worked for Defendant on a prior occasion. During the interview, Plaintiff disclosed to the interviewers that she had disabilities, a chronic post-concussive syndrome, and a back injury. Plaintiff told the interviewers that the post-concussive syndrome affected her speech pattern, made her seem slow, and she may need some accommodations at work because co-workers typically were unkind to her related to these symptoms. Plaintiff also disclosed that due to her prior back injury, lifting paper out of digital printers at this previous Ricoh assignment at its client, Fred Meyer, made her dizzy, made her head hurt, and increased her back pain. Plaintiff told the interviewers that she had discussed her disability with her previous Ricoh manager, Chris Mead, and that Plaintiff had received accommodations from Defendant in the past.

15.     On October 18, 2018, Lisa Busenbark sent an email to Plaintiff. Busenbark wrote "I'm looking at the work you are doing, and it looks solid."

PAGE 4 – COMPLAINT AND DEMAND
FOR JURY TRIAL

16.    In October 2018, one of Plaintiff's coworkers, a younger woman, Heather Survey ("Survey"), complained about Plaintiff's communication style. Plaintiff told Survey that she had a physical condition that affected how she communicated. Plaintiff reported Survey's comments to  Busenbark. Busenbark told Plaintiff that she talked to Survey. Busenbark claimed that Survey said that Plaintiff was "weird and dark" and that it was odd that Plaintiff Heather Survey that she had a condition. Plaintiff told Busenbark that because of Plaintiff's disability, it was important that Plaintiff talk slow and think about the conversation, and that if tries to talk goes too fast, she may have post concussive symptoms.

17.    Subsequent to Plaintiff's conversation with Busenbark about her disability and Survey's comments, Survey continued to complain about Plaintiff to Busenbark. Busenbark then counseled Plaintiff and took  Survey's side, criticizing how  Plaintiff spoke. At that time, a peer, Alex Binotapa ("Binotapa") was primarily responsible for reviewing Plaintiff's work. Busenbark claimed that Binotapa and Teresa Romani ("Romani") observed Plaintiff "hunting on her screen."

18.    On December 6, 2018, Lisa Busenbark met with Plaintiff. During the meeting, Busenbark claimed that Plaintiff was not following workflow directions given by her peers. This upset Plaintiff because her peers treated her hostile Jonathan Andres told Plaintiff not to worry, that everyone goes through this and Defendant likes to have "two (negative) things" on record in every employee's file. Plaintiff explained that Binotapa was behaving in a hostile way toward her.

19.    At the end of 2018, Plaintiff's work group was moved to the other side of the Standard Insurance Center building. As their workplace was being reconfigured, Defendant allowed each employer to have a say about how many lights each employee wanted over their

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

work cubicle. As an accommodation for her disability, Plaintiff asked that the lights over her cubicle be turned off because her post-concussive syndrome made her eyes sensitive to light.

20.     On February 22, 2019, Busenbark sent an email to Linda Estes. Busenbark wrote "I'm glad to see you pick the plan book to work on first, without direction from Alex (Binotapa) to do so. We are seeing that you are starting to understand workflow."

21.     On March 24, 2019, Plaintiff was injured in a serious motor vehicle collision. During that collision, Plaintiff's preexisting post-concussive syndrome was aggravated, and her post-concussive symptoms worsened. Plaintiff also had physical pain and vision problems. Plaintiff suffered from increasing impairment to her major life activities.

22.     After the motor vehicle collision, Plaintiff told both Busenbark and another employee, Tim Wooster, who was training to be the manager, that her post-concussive symptoms were worse and that she was having problems seeing.

23.     Following the collision, Plaintiff missed work only to attend medical appointments. The amount of work that Plaintiff missed to attend medical appointments was less than twenty hours in 2018 and less than twenty hours in 2019.

24.     Plaintiff talked to Busenbark about her need to take time off from work to attend medical appointments for her injuries and disabilities, including vision and speech therapy. Although Plaintiff qualified for both the Oregon Family Leave Act (OFLA) and for Oregon Sick Leave, Busenbark told Plaintiff that she could not schedule any medical appointments on April 16, 2019, May 3, 2019, or June 3 through 7, 2019 because Defendant was rolling out new print management proprietary software. Plaintiff did not argue with Busenbark and did not schedule any appointments during those dates although she needed medical and healthcare for her disability and injuries.

PAGE 6 – COMPLAINT AND DEMAND
FOR JURY TRIAL

25.     Busenbark stopped by Plaintiff's desk on her way to a meeting and announced loudly so others on the floor heard, in addition to Ricoh workers, that she knew Heather Survey and Plaintiff had something between them and she did not have time to deal with it now, but Heather Survey did not want to talk to Plaintiff and that if Plaintiff needed to talk to Heather Survey that Plaintiff had to go through Lisa Busenbark.

26.     In April 2019, Plaintiff attended a team meeting. Busenbark was irritated that Plaintiff had missed work for a medical appointment and humiliated her by referencing the absence during the team meeting. Without warning, Busenbark asked Plaintiff to lead the monthly team "Huddle" at the last minute. Busenbark said "What do you know about the ASSES (sic) program, LIN-DA?" Manager Tim Wooster said, "She just wanted to say 'ass'." After the team meeting, Busenbark demanded that Plaintiff notify her in advance of any medical appointments, which Plaintiff was already doing. Then Busenbark said Plaintiff could not take any time off for medical appointments in October 2019 as it was their busy season.

27.     Binotapa and Theresa Romani were becoming hostile and insulting to Plaintiff. During several regular meetings that Plaintiff had with Busenbark, Plaintiff reported to Busenbark that she was being subjected to bullying from  Binotapa and Romani. Busenbark said she did not think that Plaintiff was being bullied by Binotapa and Romani.

28.     On April 5, 2019, Busenbark sent an email to Plaintiff's team with the subject line: "Black Outs for Upcoming Time off." Busenbark wrote that she would not accept time off requests from April 16 through May 3, 2019, and from June 3 through 7, 2019. Busenbark wrote "Please try to schedule med appts before/after this time. If you have a critical need, please talk with me. . ."

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

29.    After receiving Busenbark's April 5, 2019 email, Plaintiff talked to Busenbark about her medical appointments. Busenbark told Plaintiff that if she wanted to take time off from work for medical appointments that she should apply for FMLA.

30.    Defendant rolled out some new software programs for the employees in Plaintiff's group and other connected groups at Standard Insurance to use. There were a lot of problems or bugs with the new software roll-out. Busenbark asked everyone in Plaintiff's group to supply her screenshots of problems each employee had individually with the new software. Plaintiff complied with Busenbark's directions and submitted screenshots of problems she was having. Plaintiff may have been the only employee who complied with sending Busenbark screenshots although all employees in Plaintiff's group and other groups were discussing problems with the software. During team meetings, Busenbark projected only Plaintiff's screenshots of software problems without hiding Plaintiff's identity. This made it appear that Plaintiff was the only one having trouble with the new software although that was not the case. Plaintiff told Busenbark that projecting only Plaintiff's screenshots was prompting teammates to snicker. Busenbark continued the practice for some time, claiming that it was helping the team.

31.    On June 10, 2019, Busenbark sent an email to Plaintiff. Busenbark wrote "Due to new tool roll out our meetings have been brief. . . . You need to continue to ensure jobs are completed accurately even in the midst of the new tool."

32.    On June 17, 2019, Busenbark sent an email to Plaintiff. Busenbark wrote "Please see me before you schedule any more time off for your accident. It is preferred that you not schedule time off when other team members are gone. It puts a lot of stress on remaining team members to complete work."

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

33.     Plaintiff was also able see Binotapa's log entries. On July 18, 2019, Plaintiff found a reference to herself in the daily log of Alex Binotapa. This is a log which all employees had access to. Alex Binotapa wrote in the log that Plaintiff was a "DUMMY" and referred to her as "Lin-duh." On July 18, 2019, Alex Binotapa also sent a condescending email to Plaintiff writing parts of the email in all capital letters (CAPS). On July 18, 2019, Plaintiff saw disparaging remarks made about Plaintiff by Teresa Romani in her log.

34.     On July 19, 2019, since Busenbark had not taken steps to protect her, Plaintiff reported Binotapa's derogatory log references about her to Busenbark's manager, Jonathan Anders. On July 19, 2019, Plaintiff sent an email to Andres. She wrote "I was instructed to look at other team members' metric charts to see how they keep their records. In the process I came across the attached comments. It was extremely hurtful running across these." The attachment shows that Alex Binotapa was referring to Plaintiff as "Lin-duh" and "DUMMY." Anders pulled Plaintiff out of a team meeting and asked her what was going on. Plaintiff told Anders about Binotapa's derogatory log references, his condescending email, and that another coworker, Teresa Romani, was bullying her. Anders asked why they were doing this. Plaintiff explained that she was suffering from post-concussive syndrome, was wearing special prismatic eyeglasses because it was hard for her to see, and that her coworkers seemed resentful of her because of her physical problems. Jonathan Anders said that no one should have to work in a hostile environment.

35.     On or about July 22, 2019, Busenbark counseled Plaintiff and told Plaintiff that she should respond to Binotapa when he was misbehaving by saying "please try not to be condescending towards me." On July 22, 2019, Plaintiff sent an email to Binotapa. She wrote "Following up, Alex (Binotapa), Lisa (Busenbark) directed me to change project tasks. In any

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

case, please try not to be condescending towards me. It is pretty unnerving and also inappropriate and unprofessional."

36.     On August 12, 2019, Plaintiff applied for Intermittent Medical Leave by submitting a Certification of Healthcare Provider. Plaintiff was told to submit the Certification of Healthcare Provider to Defendant's third-party administrator.

37.     On August 13, 2019, Plaintiff talked to Busenbark about her post-concussive syndrome and post-collision vision problems. Plaintiff told Busenbark that she had received advice from a specialist that due to her disability, and that she needed an accommodation with lighting at her workspace. She also told Busenbark that Binotapa was continuing to be difficult to work with.

38.     After Plaintiff's August 13, 2019 conversation with Busenbark about her disability and impairment, Binotapa's behavior toward her worsened. At all times relevant, Binotapa was responsible for review Plaintiff's work. Before Plaintiff complained about Binotapa to Busenbark, if Binotapa spotted an issue with Plaintiff's work, then he typically noted on the document what the specific issue was so she could correct it. After Plaintiff complained about Binotapa to Busenbark,  Binotapa started rejecting Plaintiff's jobs by writing vague comments such as "Fix this" across the face of the document rather than telling her what the specific mistake was. Plaintiff reported Binotapa's renewed hostility to Busenbark. By then Busenbark had already told Plaintiff that she had coached Binotapa about writing condescending emails to Plaintiff. Plaintiff told Busenbark that Binotapa's new behavior was hostile.

39.     On or about August 16, 2019, Plaintiff told Busenbark that she was having trouble finding time to schedule medical and health care appointments because Busenbark had blacked out dates when Plaintiff could not have medical appointments. Plaintiff then told Busenbark that

PAGE 10 – COMPLAINT AND
DEMAND FOR JURY TRIAL

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

she had applied for intermittent leave under FMLA so that she could be sure to get time off from work to attend medical appointments and to miss work when she needed to do so for her medical condition.

40.    On August 23, 2019, Busenbark sent emails acknowledging bugs in the software were continuing and were affecting Plaintiff's work. On August 23, 2019, Plaintiff's physician completed a Department of Labor Certification of Healthcare Provider which she submitted.

41.    On August 28, 2019, Plaintiff received confirmation from Ricoh's third-party administrator, The Hartford, that she had been approved for intermittent medical leave from August 16, 2019, through February 15, 2020, and that had 11.80 weeks of FMLA/OFLA leave to use during that time.

42.    In September 2019, Plaintiff scheduled a vacation. On September 19, 2019, while Plaintiff was on vacation, she found that she was blocked from entering new medical appointment dates in the online portal. Plaintiff contacted Defendant's Human Resources for an explanation and was told to contact its Third Party Administrator, The Hartford. Plaintiff contacted The Hartford who told her that The Hartford had entered her approved Intermittent Medical Leave incorrectly into Defendant's system. The Hartford told her that they would get it straightened out.

43.    Plaintiff returned from vacation on September 23, 2019. Plaintiff was escorted off the premises by Lisa Busenbark who handed her a final paycheck. Plaintiff's final paycheck was dated September 19, 2019, the same date that she discovered that she was unable to schedule time off for medical appointments and was told that her Intermittent Medical Leave form had been entered incorrectly.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

44.     On or about November 13, 2019, Kelly Kaznac, one of Defendant's employees, sent instant messages to Shamara Edwards, at The Hartford, claiming that Plaintiff's employment ended on September 13, 2019.

## FIRST CLAIM FOR RELIEF

**(Title I of the Americans with Disabilities Act – Discrimination)**

45.     Plaintiff re-alleges all relevant paragraphs.

46.     At all times material, Defendant was an employer for the purpose of, and subject to, the ADA.

47.     Plaintiff has an impairment which substantially limits one or more major life activities. Plaintiff has a history or record of such impairment and was regarded by Defendant as having such impairment.

48.     After Plaintiff disclosed her disability to Defendant, Plaintiff requested reasonable accommodations. Defendant denied Plaintiff's request for accommodations. Defendant failed to engage in the interactive process with Plaintiff.

49.     Defendant discriminated against Plaintiff as alleged above. Said discrimination was based on Defendant's failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, a hostile work environment, and termination of employment.

50.     At all relevant times, Plaintiff was able to perform the essential functions of Plaintiff's position, with reasonable accommodations.

51.     Defendant's conduct violated 42 U.S.C. § 12112.

52.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, distress, and impairment of Plaintiff's personal dignity and right

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

to be free from discrimination. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

53.     Plaintiff is entitled to equitable relief, including, but not limited to, a finding that Defendant violated the ADA.

54.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

55.     The court should enter an order finding that Defendant violated the ADA.

56.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

57.     Pursuant to 42 U.S.C. §§ 12117 and 2000e-5, Plaintiff is entitled to an award of attorney's fees, expert witness fees and costs incurred herein.

58.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SECOND CLAIM FOR RELIEF

### (Title I of the Americans with Disabilities Act – Retaliation)

59.     Plaintiff re-alleges all relevant paragraphs.

60.     Defendant retaliated against Plaintiff as stated above for pursuing Plaintiff's rights in accordance with the ADA. Such actions by Defendant is in violation of the ADA.

61.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer emotional distress.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

62.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

63.     Plaintiff is entitled to equitable relief, including, but not limited to, a finding that Defendant violated the ADA.

64.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

65.     Pursuant to 42 U.S.C. §§ 12117 and 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees and costs incurred herein.

66.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

### THIRD CLAIM FOR RELIEF

### (Title I of the Americans with Disabilities Act – Interference)

66.     Plaintiff re-alleges all relevant paragraphs.

67.     Defendant interfered with Plaintiff in pursuing accommodations under the ADA. Such actions by Defendant is in violation of the ADA.

68.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and continues to suffer emotional distress.

69.     Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

70.     Plaintiff is entitled to equitable relief, including, but not limited to, a finding that Defendant violated the ADA.

71.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

72.     Pursuant to 42 U.S.C. §§ 12117 and 2000e-5, Plaintiff is entitled to an award of attorney's fees, expert witness fees and costs incurred herein.

73.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(Family and Medical Leave Act of 1993 - 29 U.S.C. § 2601 et seq. )**

74.     Plaintiff re-alleges all relevant paragraphs.

75.     Defendant is an 'employer[s]' within the meaning of 29 U.S.C. § 2611(4).

76.     Defendant employed at least 50 employees for each working day during each of 20 or more calendar work weeks in 2015, 2016, 2017, and 2018.

77.     At all times material, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

78.     At all times in 2018, and 2019, Defendant employed 50 or more employees with? 75 miles of the worksite where Plaintiff performed work for Defendant.

79.     Plaintiff was employed by Defendant for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.

80.     Plaintiff was employed by Defendant for more than 12 months prior to commencing leave in 2019.

PAGE 15 – COMPLAINT AND
DEMAND FOR JURY TRIAL

81.     At all times material, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2). At all material times, Plaintiff suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

82.     In reliance on statements by Defendant and its Third Party administrator that Plaintiff was eligible for medical leave, Plaintiff took medical leave protected by the Family Medical Leave Act (FMLA).

83.     Defendant interfered, discriminated and retaliated against Plaintiff for engaging in the protected activity of taking leave under the FMLA.

84.     Defendant interfered, discriminated, and retaliated against Plaintiff for taking medical leave by taking adverse employment actions against Plaintiff, including, but not limited to, demanding or persuading Plaintiff to return to work before the expiration of previously approved medical leave and terminating Plaintiff's employment.

85.     As a direct and proximate result of Defendant's interference, discrimination and retaliation, Plaintiff has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to Plaintiff's economic damages in an amount to be determined at trial.

86.     The court should enter an order declaring that Defendant violated the FMLA.

87.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

88.     Plaintiff is entitled to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A).

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

89.     Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs incurred herein.

90.     Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## FIFTH CLAIM FOR RELIEF

### (ORS 659A.103 et seq. - Oregon Rehabilitation Act)

91.     Plaintiff re-alleges all relevant paragraphs.

92.     Plaintiff is a 'disabled person' as defined at ORS 659A.104(1).

93.     Defendant is an 'employer[s]' as defined at ORS 659A.106.

94.     After Plaintiff disclosed Plaintiff's disability to Defendant, Defendant began to discriminate against Plaintiff as alleged above. Said discrimination was based on Defendant's failure to reasonably accommodate Plaintiff, disparate treatment, retaliation, and a hostile work environment.

95.     Defendant denied reasonable accommodations to Plaintiff. Defendant failed to engage in the interactive process with Plaintiff. Defendant terminated Plaintiff's employment.

96.     Plaintiff could perform the essential functions of Plaintiff's job with Defendant with reasonable accommodations.

97.     Defendant's refusal to provide reasonable accommodations for Plaintiff's known disability constitutes discrimination against Plaintiff due to Plaintiff's disability pursuant to ORS 659A.103 *et seq*.

98.     As a result of Defendant's unlawful employment actions, Plaintiff suffered and

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

continues to suffer emotional distress. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

99.    Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional distress and other non-pecuniary losses in an amount to be proved at trial. Plaintiff should be awarded non-economic damages in an amount determined fair by a jury.

100.    Plaintiff is entitled to equitable relief, including, but not limited to, a finding that Defendant violated the Oregon Rehabilitation Act.

101.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

102.    Pursuant to ORS Chapter 659A and ORS 20.107, Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert witness fees.

103.    Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SIXTH CLAIM FOR RELIEF

### (Wrongful Termination )

104.    Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

105.    Defendant's conduct, as alleged, was in retaliation for Plaintiff assertion of Plaintiff's state and federally protected rights to work in an environment free from discrimination, harassment, and otherwise hostile work environments, and as such constitutes a wrongful discharge under state common law.

106.    Plaintiff's remedies under state and federal statutory law do not constitute a

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

complete remedy for the damage Defendant has inflicted.

107.    As a result, Plaintiff suffered, and continues to suffer, damages and is entitled to

108.    the damages and other relief set forth below.

## **PRAYER FOR RELIEF**

Plaintiff prays for the following judgment against Defendant as follows:

A.    A sum which will fully compensate Plaintiff for Plaintiff's non-economic

damages in a sum that is just as determined by a jury;

B.    A sum which will fully compensate Plaintiff for Plaintiff's economic damages in a

sum that is just as determined by a jury;

C.    Equitable relief;

D.    Liquidated damages for medical leave interference;

E.    Plaintiff's costs and disbursements incurred herein;

F.    Plaintiff's attorneys' fees; and

G.    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**


Dated: May 11, 2021.


                                        **Law Offices of Daniel Snyder**

                                         */s/ Daniel Snyder*
                                        Daniel Snyder, OSB No. 783856
                                        dansnyder@lawofficeofdanielsnyder.com
                                        Carl Post, OSB No. 06105
                                        carlpost@lawofficeofdanielsnyder.com
                                        John David Burgess, OSB 106498
                                        johnburgess@lawofficeofdanielsnyder.com
                                        Tel: (503) 241-3617 / Fax: (503) 241-2249
                                        Of Attorneys for Plaintiff


PAGE 19 – COMPLAINT AND
DEMAND FOR JURY TRIAL